UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID ROBBINS,
      Petitioner,

      vs.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:15-cv-181

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Petitioner, an inmate in state custody at the Chillicothe Correctional Institution in

Chillicothe, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §

2254. (Doc. 5). This matter is before the Court on the petition, respondent's return of writ and

petitioner's "traverse" in reply to the return of writ. (Docs. 5, 7, 10).[1]

**I. PROCEDURAL BACKGROUND**

**State Trial Proceeding**

In June 2010, the Hamilton County, Ohio, grand jury returned an indictment charging

petitioner with one count of aggravated murder of Yolanda Smith in violation of Ohio Rev. Code

§ 2903.01(A) (Count 1); one count of murder of Yolanda Smith in violation of Ohio Rev. Code §

2903.02(B) (Count 2); two counts of felonious assault of Yolanda Smith in violation of Ohio

Rev. Code § 2903.11(A) (Counts 3 and 4); and two counts of felonious assault of Doris Robbins

in violation of Ohio Rev. Code § 2903.11(A) (Counts 5 and 6). (Doc. 6, Ex. 1). The incident

giving rise to the charges occurred on June 4, 2010. (*See id.*). The facts were summarized as

follows by the Ohio Court of Appeals, First Appellate District, based on evidence presented at

---

[1] Respondent has also separately filed 38 exhibits obtained from the underlying state-court record. (*See* Doc. 6).

petitioner's trial:[2]

> [Mr. Robbins] repeatedly stabbed Yolanda Smith causing her death, and cut Doris Robbins when she came to Ms. Smith's defense. Ms. Robbins is the spouse of the defendant and the mother of Ms. Smith. According to evidence adduced at trial, Mr. Robbins had been married to Ms. Robbins for the past 21 years, but also had been engaging in sexual relations with Ms. Smith for the past eight years.

****

> Norwood police officer Matt Evans testified at trial that he had responded to Millcrest Park on June 4, 2010. When he arrived at the park, he was met by Ms. Robbins who told Officer Evans that her daughter had been stabbed. Ms. Smith was barely breathing and had no noticeable pulse. According to Officer Evans, Ms. Robbins identified the person who had stabbed Ms. Smith as "Dave."

> Ms. Robbins testified that at the suggestion of the defendant, she and Ms. Smith agreed to meet at the park so that Ms. Smith could give Ms. Robbins advice about Ms. Robbins's relationship with the defendant. When Ms. Robbins asked Ms. Smith whether she thought the Robbinses could work out their marital problems, Ms. Smith answered, "Hell no, momma." At that point, Mr. Robbins walked behind Ms. Smith, hit her in the back, and then grabbed her by the collar and began to stab her. The two fell to the ground wrestling. Ms. Robbins intervened and tried to pull Mr. Robbins off of Ms. Smith, and in the process was cut by the knife. Mr. Robbins jumped up and fled. Ms. Robbins further testified that she had not learned that Mr. Robbins and Ms. Smith had had a sexual relationship and that Mr. Robbins was the father of Ms. Smith's twin boys until after he had been charged in this matter.

> Detective Kurt Ballman testified about his interview with Mr. Robbins after he had been taken into custody. Detective Ballman related that after he had informed Mr. Robbins of his *Miranda* rights, Mr. Robbins gave multiple accounts about what had happened at the park. Mr. Robbins first claimed that he only remembered falling down with Ms. Smith and that he had then blacked out. Later, Mr. Robbins stated that he had stabbed Ms. Smith only after she had stabbed him. He indicated a cut on his left hand that he said had been caused by Ms. Smith. When Detective Ballman told Mr. Robbins that this story did not sound truthful, Mr. Robbins stated that he had been upset because Ms. Smith had recently ended their eight-year affair. At the park, he heard Ms. Smith tell her

---

[2] The Ohio appellate court summarized the facts in its direct appeal decision issued February 22, 2013. (*See* Doc. 6, Ex. 14). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, the appellate court's findings are presumed to be correct. *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

mother that he had raped her.  Angered by the accusation, he grabbed a knife and stabbed Ms. Smith.  Mr. Robbins said he could remember stabbing Ms. Smith only once.

Denise Wallace testified on behalf of Mr. Robbins.  According to Ms. Wallace, Robbins had shown up at her house on June 4 with blood on his head and a cut on his finger.  Mr. Robbins told her that Ms. Smith had pulled a knife on him and that he had blacked out.

Mr. Robbins took the stand in his own defense.  He stated that he had begun a sexual relationship with Ms. Smith in an attempt to get her pregnant so that she could leave the Army.  By his account, he told Ms. Robbins about the relationship during the week prior to June 4, and it was Ms. Smith who had suggested meeting in the park.  Mr. Robbins testified that he did not remember much of what had happened at the park.  He only remembered that Ms. Smith had grabbed him by his shirt and that he had run to his truck and driven away.

(*Id.*, Ex. 14, pp. 2-4, at PAGEID#: 108-10).

Prior to trial, petitioner's counsel filed a motion to suppress the statements that petitioner had made to the police.  (*Id.*, Ex. 4).  Following a hearing, the trial court denied the motion.  (*See id.*, Ex. 6).

Petitioner was found competent to stand trial.  (*Id.*, Ex. 5).  Thereafter, he waived his right to a jury trial, and the matter proceeded to trial before the court.  (*See id.*, Ex. 7).  At the conclusion of the trial, the court acquitted petitioner of the aggravated murder charge in Count 1 and the felonious assault charge in Count 5, but found petitioner guilty of the murder offense charged in Count 2 and the felonious assault offenses charged in Counts 3, 4 and 6.  (*Id.*, Exs. 8-9).

On February 10, 2012, following a sentencing hearing, the trial court issued a Judgment Entry sentencing petitioner to an aggregate prison term of twenty-three (23) years to life.  (*Id.*, Ex. 10).  The sentence consisted of consecutive prison terms of fifteen (15) years to life for the murder offense in Count 2 involving the victim Yolanda Smith, and eight (8) years for the felonious assault offense charged in Count 6, which involved Doris Robbins as the victim.  (*See*

*id.*).

## State Appeal Proceedings

Assisted by new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District. (*See* Doc. 6, Ex. 11). In the appellate brief filed by another attorney on petitioner's behalf, petitioner asserted the following assignments of error:

1. The trial court erred to the prejudice of Defendant-Appellant by not granting his motion to suppress statement.

2. The trial court abused its discretion and committed plain error to Robbins' prejudice in allowing evidence of his other alleged bad acts.

3. The evidence was insufficient as a matter [of] law and/or against the manifest weight of the evidence to sustain Robbins' convictions for murder and felonious assault.

4. The trial court erred and committed plain error to Robbins' prejudice when it failed to acquit Robbins because the evidence was arguable that Yolanda Smith was the aggressor and Robbins acted in self-defense in repelling the assault, and Robbins received ineffective assistance of counsel by not arguing self-defense.

5. The trial court erred to Robbins' prejudice when it imposed post-release control as part of his murder sentence and failed to address the issue of court costs, thereby rendering it a void sentence.

6. The trial court erred to Robbins' prejudice in imposing an excessive and consecutive sentence for felonious assault and murder which is a sentence contrary to law when it failed to make any sentencing findings for imposing consecutive sentences.

(*Id.*, Ex. 12).

On February 22, 2013, the Ohio Court of Appeals issued an Opinion affirming the trial court's judgment in part, vacating petitioner's sentences in part, and remanding the matter to the trial court for resentencing. (*Id.*, Ex. 14). Specifically, the state appellate court overruled all of petitioner's assignments of error except for the fifth and sixth assignments of error pertaining to petitioner's sentence. (*See id.*). The court sustained the fifth assignment of error on the ground

that the trial court failed to address the issue of court costs when sentencing petitioner and had

erred in notifying petitioner that he was subject to a five-year term of post-release control for the

second-degree felony offense of felonious assault when "only three years of postrelease control

is required." (*Id.*, p. 8, at PAGEID#: 114).  The court sustained the sixth assignment of error

because the trial court "did not make any findings before imposing consecutive sentences" as

required under Ohio Rev. Code § 2929.14(C).  (*Id.*, pp. 8-9, at PAGEID#: 114-15).  The court,

therefore, remanded the matter to the trial court "to consider whether consecutive sentences are

appropriate under R.C. 2929.14(C), and if so, to make the proper findings on the record, for a

consideration of court costs, and for the imposition of the proper term of postrelease control."

(*Id.*, p. 9, at PAGEID#: 115).  In all other respects, the trial court's judgment was affirmed.  (*Id.*).

　　　Petitioner did not pursue a timely appeal to the Ohio Supreme Court from the portion of

the Ohio Court of Appeals' decision affirming the trial court's judgment of conviction.  On July

5, 2013, over four months after the issuance of the direct appeal decision, petitioner filed a *pro se*

notice of appeal and motion for leave to file a delayed appeal to the Ohio Supreme Court.  (*Id.*,

Exs. 15-16).  In an affidavit attached to the motion, petitioner asserted the following argument as

"cause" for his delay in filing:

> 1.　Because the Ohio Public Defenders Office was reviewing my case, . . . I
> believed they were going to represent me in this Court;
>
> 2.　On March 5, 2013, the Public Defenders contacted me and informed me that
> they would not be assisting me with my appeal to this Court;
>
> 3.　After being so informed, I sought assistance from inmates in the "Law
> Library" here . . ., but none of the inmates would assist me;
>
> 4.　I am housed in D-block, . . . and while here, I met another inmate familiar
> with the law [who] agreed to help me do my delayed appeal, that is now being
> placed before this Honorable Court for consideration.

(*See id.*, Ex. 16).

On September 4, 2013, the Ohio Supreme Court denied petitioner's motion for a delayed appeal without opinion. (*Id.*, Ex. 17).

### State Proceedings Pertaining To Re-Sentencing

The trial court initially responded to the Ohio Court of Appeals' February 22, 2013 remand order by issuing a "Nunc Pro Tunc 02/02/2012" judgment entry of sentence on April 17, 2013. (Doc. 6, Ex. 18). In that entry, the same aggregate sentence of twenty-three (23) years to life was imposed. (*See id.*). In addition, the entry provided that no court costs, fines or fees were imposed and that petitioner was subject to a three-year term of post-release control. (*See id.*). On April 23, 2013, the trial court issued another judgment entry of "Re-Sentence" which reflected that a resentencing hearing had been held on April 11, 2013. (*Id.*, Ex. 19). The entry also provided that the felonious assault offenses charged in Counts 3 and 4 were "merged" with the murder offense charged in Count 2 and that petitioner was to receive credit for 1,040 days of time served. (*Id.*, Ex. 19). Finally, on May 1, 2013, the trial court issued a "Nunc Pro Tunc 04/12/13" judgment entry to reflect that the resentencing hearing was held on April 12, 2013 and to provide the name of a different attorney as representing petitioner at that hearing. (*Id.*, Ex. 20). Respondent has pointed out in the return of writ that the May 1, 2013 entry contained incorrect information about the attorney and omitted the jail-time credit calculation. (*See* Doc. 7, Brief, p. 6, at PAGEID#: 255).

In the meantime, on April 22, 2013, the attorney who represented petitioner on direct appeal filed a notice of appeal from the trial court's April 17, 2013 entry to the Ohio Court of Appeals, First Appellate District. (*Id.*, Ex. 21). With the assistance of new counsel, petitioner later filed an amended notice of appeal, which included the trial court's April 23 and May 1, 2013 entries. (*Id.*, Ex. 22). In an amended brief filed by the new attorney on petitioner's behalf,

6

petitioner asserted two assignments of error:

1. Trial Courts Lack Authority to Reconsider Valid Final Judgments in Criminal Cases. A Criminal Judgment is Final with the issuance of a Final Order Satisfying Crim. R. 32(C). The Trial Court Issued a Final Judgment Satisfying Crim. R. 32(C) on April 23, 2013. Did the Trial Court Err in Reconsidering Its Final Judgment Modifying it to Deny Robbins Earned Jail Time Credit?

2. Trial Courts Must Engage in a Three Step Process Before Imposing Consecutive Sentences. This Process Requires the Trial Court to Make Specific Statutorily Required Findings. The Trial Court's Findings Must Be Supported by the Record. Did the Trial Court Err in Making Findings Not Supported By the Factual Record?

(*Id.*, Ex. 23).

On June 30, 2014, the Ohio Court of Appeals issued a Judgment Entry overruling petitioner's second assignment of error, but finding that the May 1, 2013 "nunc pro tunc" order "was improper" and that "[t]he court's April 23, 2013 judgment is the order of the court." (*Id.*, Ex. 25). The court, therefore, remanded the matter to the "trial court to vacate its 'nunc pro tunc' order dated May 1, 2013" and affirmed the trial court's April 23, 2013 resentencing judgment. (*Id.*). Pursuant to the state appellate court's remand order, the trial court issued an order on December 9, 2014 vacating the "Nunc Pro Tunc entry dated May 1, 2013" and stating that "[t]he Court's April 23, 2013 judgment entry governs." (*Id.*, Ex. 26).

In the meantime, petitioner filed a timely *pro se* notice of appeal and memorandum in support of jurisdiction with the Ohio Supreme Court from the portion of the Ohio Court of Appeals' June 30, 2014 decision overruling the second assignment of error. (*See id.*, Exs. 27-28). In his memorandum in support of jurisdiction, petitioner asserted as the sole proposition of law the claim that he had raised in his second assignment of error to the Ohio Court of Appeals. (*See id.*, Ex. 28, p. 9, at PAGEID#: 194). On January 28, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id.*, Ex. 29).

7

**Application To Reopen Appeal**

On March 29, 2013, petitioner filed a *pro se* pleading entitled "Notice Of Reopening

Appeal Pursuant to Ohio App. 26-B" with the Ohio Court of Appeals, First Appellate District.

(Doc. 6, Ex. 30).  In the pleading, petitioner claimed that his counsel on direct appeal was

ineffective for failing to present the following proposed assignments of error to the court for

consideration:

1. The prosecutor never established Venue by the witness to the alleged crime[.]
   [T]his prejudiced the defendant[']s right to a fair and just trial under the due
   process of law and equ[a]l protection through the 14th amendment to the U.S.
   and Ohio constitution. . . .

2. The appellant was denied his right to a fair trial as a result of PROSECUTION
   MISCONDUCT[.]  [T]his violated due process of law under the 14th amend.

3. The defendant was denied his right to a fair trial when the courts admitted a
   perjured testimony and convicted the defendant on that testimony[.]  [T]his
   violated the defendant[']s due process rights and equal protection rights of the
   14th and 5th amend.

(*Id.*, at PAGEID#: 216, 218, 220).

On September 5, 2013, the Ohio Court of Appeals denied petitioner's request for

reopening of the appeal.  (*Id.*, Ex. 33).  The court reasoned that "[b]ecause the proposed

assignments of error would not have presented a reasonable probability of success had counsel

advanced them on appeal, Robbins has failed to demonstrate a genuine issue as to whether he has

a colorable claim of ineffective assistance of counsel on appeal."  (*Id.*, p. 3, at PAGEID#: 234).

It appears from the record that petitioner did not pursue an appeal to the Ohio Supreme Court

from that ruling.  (*See* Doc. 7, p. 8, at PAGEID#: 257).

**Federal Habeas Corpus Petition**

In March 2015, petitioner commenced the instant federal habeas corpus action.  (*See* Doc.

1).  The petition is difficult to follow, but construing the pleading liberally, it appears that

8

petitioner is raising the following grounds for relief:

> **Ground One:** The trial court failed to provide 1,040 days of jail time credit, and
> . . . the trial court ordered consecutive sentencing without mandatory findings
> under 2929.14(C).
>
> **Ground Two:** The trial court denied petitioner due process and equal protection
> of the law under the 5th and 14th Amendments to the U.S. Constitution[] where
> the trial court failed to engage in a three-step process before imposing consecutive
> sentences.
>
> **Ground Three:** Ineffective assistance of trial counsel not arguing self-defense.
>
> **Ground Four:** The trial court abused it[]s discretion/denied motion to suppress
> statement made after arrest.
>
> **Ground Five:** The conviction was not supported by the sufficiency of the
> evidence.
>
> **Ground Six:** The trial court erred when it imposed post-release control as part of
> a murder sentence, and failed to address court cost.

(Doc. 5, at PAGEID#: 35, 37, 39, 40, 41).

In the return of writ filed in response to the petition, respondent contends that petitioner

procedurally defaulted and has waived all of his grounds for relief except for the claim alleged in

Ground Two. (*See* Doc. 7, p. 9, at PAGEID#: 258).  Respondent further argues that the non-

defaulted claim is not cognizable in this federal habeas proceeding. (*Id.*).  Petitioner has filed a

"traverse" brief in reply to the return of writ. (Doc. 10).

## II.  OPINION

### A.  Petitioner Procedurally Defaulted And Has Waived The Jail-Time-Credit Claim Alleged In Ground One And The Claims Alleged In Grounds Three Through Six Of The Petition

In recognition of the equal obligation of the state courts to protect the constitutional rights

of criminal defendants, and in order to prevent needless friction between the state and federal

courts, a state defendant with federal constitutional claims must fairly present those claims to the

state courts for consideration before raising them in a federal habeas corpus action. *See* 28

U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard*

*v. Connor,* 404 U.S. 270, 275-76 (1971).  In order to satisfy the fair presentation requirement, the

claims asserted in the federal habeas petition must be based on the same facts and same legal

theories that were presented to the state courts. *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir.

2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d

313, 322 (6th Cir. 1998)).  Moreover, a claim is deemed fairly presented only if the petitioner

presented his constitutional claims for relief to the state's highest court for consideration. *See*

*O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483

(6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).  If the petitioner fails

to fairly present his constitutional claims through the requisite levels of state appellate review to

the state's highest court, or commits some other procedural default that prevents a merit-based

review of the federal claims by the state's highest court, he may have waived the claims for

purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S.

255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v.*

*Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

        It is well-settled under the procedural default doctrine that the federal habeas court may

be barred from considering an issue of federal law from a judgment of a state court if the

judgment rests on a state-law ground that is both "independent" of the merits of the federal claim

and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62.  The

Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default, and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review.  *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit employs a three-prong test, which was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . .  Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . .  Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr,* 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012).  Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice." *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493 F. App'x at 669.  *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v.*

11

*Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, the only claim that was fairly presented by petitioner to the state courts is the claim in Ground Two and a portion of Ground One challenging the consecutive sentences that were imposed on resentencing. Petitioner raised the claim to both the Ohio Court of Appeals and Ohio Supreme Court on appeal from resentencing entries that issued on April 17, April 23 and May 1, 2013. (*See* Doc. 6, Exs. 23, 28). However, petitioner procedurally defaulted all of his other grounds for federal habeas relief in the state courts.

First, although petitioner presented the claims alleged in Grounds Three through Six of the petition as assignments of error on direct appeal to the Ohio Court of Appeals, petitioner committed a procedural default by failing to pursue a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' February 22, 2013 decision addressing those assignments of error.[3] Although petitioner later attempted to obtain a delayed appeal with the Ohio Supreme Court, the state's highest court denied petitioner leave to pursue such an appeal. (*See* Doc. 6, Exs. 16-17). The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for leave to file a delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam); *see also Baker v. Bradshaw,* 495 F. App'x 560, 565 (6th Cir. 2012) (citing *Bonilla* in pointing out that "[t]his court has held that violation of . . . the timeliness requirements for an appeal to the Ohio Supreme Court . . . constitute[s] adequate and independent state grounds to preclude hearing an untimely claim on the merits"). Here, as in

---

[3] In its direct appeal decision, the Ohio Court of Appeals overruled the assignments of error that are asserted in Grounds Three through Five of the petition, but sustained the claim of error asserted in Ground Six and remanded the matter to the trial court to correct the errors regarding post-release control and court costs. (*See* Doc. 6, Ex. 14, p. 8, at PAGEID#: 114). The corrections were made by the trial court in accordance with the remand order. (*See id.*, Ex. 19). Therefore, the claim alleged in Ground Six is moot as well as procedurally defaulted.

*Bonilla* and *Baker*, because petitioner failed to pursue a timely appeal to the Ohio Supreme Court and the Ohio Supreme Court denied petitioner leave to file a delayed appeal, the state's highest court never had the opportunity to consider the merits of the claims alleged in Grounds Three through Six of the petition.

Second, to the extent petitioner has alleged in Ground One that the trial court erred when it "failed to provide 1,040 days of jail time credit" in certain resentencing decisions, he only raised the claim to the Ohio Court of Appeals on appeal from the resentencing entries issued on April 17, April 23 and May 1, 2013.  The Ohio Court of Appeals ruled that the resentencing entry issued April 23, 2013 "is the order of the court" and that because that order properly reflected petitioner's jail-time credit, petitioner's claim of error was "moot." (*See* Doc. 6, Ex. 25, p. 2, at PAGEID#: 178).[4]  Apparently because the state appellate court remedied the alleged error by ordering the vacation of the May 1, 2013 entry and affirming the April 23, 2013 judgment entry, petitioner did not assert the claim as a proposition of law on further appeal to the Ohio Supreme Court. (*See id.*, Ex. 28).[5]

In sum, the undersigned concludes that petitioner procedurally defaulted the jail-time-credit claim alleged in Ground One, as well as the claims alleged in Grounds Three through Six of the petition, in the state courts because the state's highest court was not provided the opportunity to address those claims on the merits.  Therefore, the defaulted grounds for federal habeas relief are waived and barred from review by this Court unless petitioner "can demonstrate

_____

[4] Because the alleged error of omission regarding jail-time credit was corrected by the Ohio Court of Appeals, it appears that the claim, like the claim alleged in Ground Six of the petition and discussed *supra*, p. 12 n.3, is also moot as well as procedurally defaulted.

[5] It is noted that petitioner has not asserted any claims that were raised in his state reopening application as grounds for relief in the instant action.  However, even if petitioner had asserted those claims in his habeas petition, the claims are procedurally defaulted because he did not pursue a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' September 5, 2013 decision denying the reopening application and delayed appeals to the state's highest court are not permitted in such actions. *See* Ohio S.Ct.Prac. R. 7.01(A)(4)(c).

cause for the default[s] and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *See Hoffner*, 622 F.3d at 497 (quoting *Coleman,* 501 U.S. at 750); *see also Bonilla,* 370 F.3d at 497.

Petitioner has neither argued nor otherwise demonstrated that failure to consider his defaulted claims will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). No such showing has been made to the extent that petitioner has challenged the sufficiency of the evidence introduced at trial to establish his guilt, because actual innocence means factual innocence, not mere legal insufficiency. *See House v. Bell,* 547 U.S. 518, 538 (2006); *Carter v. Mitchell,* 443 F.3d 517, 538 (6th Cir. 2006) (citing *Bousley v. United States,* 523 U.S. 614, 623 (1998)); *Wright v. Lazaroff,* 643 F. Supp.2d 971, 989 (S.D. Ohio 2009) (Barrett, J.; Hogan, M.J.); *see also Vanwinkle v. United States,* 645 F.3d 365, 369 (6th Cir. 2011).

Moreover, petitioner has not established cause for his procedural defaults in this case. As an initial matter, he has not provided any justification for his default of the jail-time-credit claim alleged in Ground One of the petition. With respect to the claims alleged in Grounds Three through Six of the petition, petitioner has argued as "cause" for his failure to file a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' February 22, 2013 decision addressing those claims that (1) he believed the Ohio Public Defender's Office was going to prepare and file his appeal with the Ohio Supreme Court until the office declined to represent him on March 5, 2013; and (2) he sought, but was unable to obtain, legal assistance from inmates in the prison law library after the Ohio Public Defenders Office declined to represent him. However, even assuming that petitioner initially believed that he would be represented by the

14

Ohio Public Defender's Office on appeal to the Ohio Supreme Court, it is clear from the record that he knew on March 5, 2013, over one month before the 45-day period for filing a timely appeal to the state's highest court expired on April 8, 2013, that the office had declined to represent him. Furthermore, to the extent that petitioner contends that his default should be excused because, unlike other inmates who refused to assist him, he is a *pro se* litigant who lacks knowledge of the law or the procedural requirements for seeking an appeal with the Ohio Supreme Court on his own, it is well-settled in the Sixth Circuit that such reasons are insufficient to establish cause to excuse a procedural default. *See, e.g., Bonilla*, 370 F.3d at 498; *see also Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995) (holding that the petitioner's "pro se status and ignorance of his rights do not constitute cause excusing his failure to raise grounds before the state courts"); *Rogers v. Warden, Warren Corr. Inst.,* No. 1:10cv397, 2011 WL 1771691, at *6 (S.D. Ohio Feb. 8, 2011) (Litkovitz, M.J.) (Report & Recommendation) ("[t]he petitioner's pro se status, ignorance of the law or procedural requirements, or limited access to legal materials does not constitute cause" to excuse his procedural default of his habeas claims), *adopted,* 2011 WL 1753711 (S.D. Ohio May 9, 2011) (Dlott, J.).

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted and has waived the jail-time-credit claim alleged in Ground One of the petition, as well as the claims alleged in Grounds Three through Six of the petition, in the absence of a showing of cause for his procedural defaults or that a fundamental miscarriage of justice will occur if his defaulted claims for relief are not considered by this Court. The claims, which are barred from review, are subject to dismissal with prejudice.

### B. Petitioner Is Not Entitled To Relief Based On The Remaining Claim In Ground One And the Claim in Ground Two Challenging His Consecutive Sentences

In Grounds One and Two of the petition, petitioner has asserted as a ground for relief that

the trial court erred in imposing consecutive sentences for his murder and felonious assault convictions in the absence of "specific statutorily required findings" supported by the record. (*See* Doc. 5, at PAGEID#: 35, 37; *see also* Doc. 6, Ex. 23, pp. 6-9, at PAGEID#: 152-55 & Ex. 28, pp. 9-11, at PAGEID#: 194-96).

As an initial matter, to the extent that petitioner has alleged that the trial court erred in interpreting and applying Ohio's sentencing statute governing consecutive sentences in imposing the consecutive sentences in this case, his claim raises an issue of state-law only which is not cognizable in this federal habeas proceeding. *Cf. Driggins v. Lazaroff*, No. 1:14cv919, 2015 WL 6957219, at *1, *31 (N.D. Ohio Oct. 27, 2015) (citing *Wilson v. Corcoran*, 562 U.S. 1, 8 (2010); *Oregon v. Ice*, 555 U.S. 160, 163 (2009)); *Hoffman v. Tribley*, No. 13-10868, 2013 WL 1137353, at *2 (E.D. Mich. Mar. 19, 2013) (and cases cited therein) ("Regarding consecutive sentencing, the application of state sentencing laws governing consecutive sentencing does not present a federal constitutional question but merely an issue of state law which is not cognizable on habeas review."). *See also Floyd v. Alexander,* 148 F.3d 615, 619 (6th Cir. 1998) (holding that although the trial court may have violated a state criminal rule in changing the petitioner's sentence from concurrent to consecutive sentences in his absence, "this error does not . . . constitute a violation of procedural due process of law," but rather is an alleged violation of state law "that is not cognizable in a federal habeas corpus proceeding"); *Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (holding that a claim challenging the state prisoner's aggregate prison sentence "involves a matter of state law," which "is not cognizable in a federal habeas corpus proceeding"). In this federal habeas case, the Court has jurisdiction to review petitioner's claim only to the extent that petitioner challenges his confinement based on an alleged violation of the Constitution, laws or treaties of the United States, and not "on the basis of a perceived error of

16

state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson,* 562 U.S. at 5 (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions"). Because habeas review is limited to claims implicating federal concerns, this Court lacks jurisdiction to consider petitioner's claim to the extent petitioner contends that, as a matter of state law, the imposition of consecutive sentences was improper.

Petitioner has generally averred in Ground Two that the consecutive sentences imposed in this case deprived him of his federal constitutional rights to due process and equal protection. (*See* Doc. 5, at PAGEID#: 37). However, petitioner's claim is based solely on an alleged violation of Ohio's sentencing statute governing consecutive sentences, which as discussed above, falls outside this Court's authority to consider. *Cf. Bennett v. Turner*, No. 1:12cv489, 2013 WL 557013, at *3 (N.D. Ohio Jan. 23, 2013) (Report & Recommendation) (rejecting the habeas petitioner's attempt to cast his claim of sentencing error under Ohio law "in constitutional terms by stating his 'sentence was not given according to due process and equal protection'"), *adopted*, 2013 WL 518704 (N.D. Ohio Feb. 12, 2013). In any event, a review of the record does not reflect any error of constitutional dimension.

Petitioner has conceded that "each prison term imposed [in this case] was within the range provided by statute." (*See* Doc. 6, Ex. 23, p. 6, at PAGEID#: 152 & Ex. 28, p. 9, at PAGEID#: 194; Doc. 10, p. 7, at PAGEID#: 277). Moreover, the Supreme Court explicitly held in *Oregon v. Ice*, 555 U.S. 160 (2009), that the imposition of consecutive sentences does not implicate constitutional concerns under the Sixth Amendment. Indeed, the Supreme Court emphasized in *Ice* that the choice whether to impose sentences consecutively or concurrently is a matter that has historically rested "exclusively" with the sentencing judge and, moreover, that

"the prevailing practice" of judges has been the "imposition of consecutive, rather than concurrent, sentences." *Ice*, 555 U.S. at 168-69. Although the *Ice* Court recognized that legislatures in states like Ohio and Oregon subsequently enacted "statutory protections meant to temper the harshness of the historical practice" favoring consecutive sentences, the Court also made it clear that the state-created protections do not trigger constitutional concerns, but rather fall within the "authority of States over the administration of their criminal justice systems," which "lies at the core of their sovereign status." *Id.* at 169-70. As the *Ice* Court further stated in pertinent part:

> *All agree that a scheme making consecutive sentences the rule, and concurrent sentences the exception, encounters no Sixth Amendment shoal.* To hem in States by holding that they may not equally choose to make concurrent sentences the rule, and consecutive sentences the exception, would make scant sense. Neither *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000),] nor our Sixth Amendment traditions compel straitjacketing the States in that manner.

*Id.* at 171 (emphasis added).

Finally, to the extent petitioner may argue that his sentence amounts to cruel and unusual punishment under the Eighth Amendment, the record does not support such a claim. "[A] sentence within the statutory maximum set by statute generally does not constitute cruel and unusual punishment." *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (internal quotation marks and citation omitted). It is well-established under the applicable Supreme Court precedents that the Eighth Amendment contains a "narrow proportionality principle," which "'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *See Graham v. Florida*, 560 U.S. 48, 59-60 (2010) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997, 1000-01 (1991) (Kennedy, J., concurring in part and concurring in judgment)) (internal quotation marks contained within quoted language omitted); *see also United States v. Moore*, 643 F.3d 451, 454

18

(6th Cir. 2011) (and Supreme Court cases cited therein). "A defendant challenging his sentence under the Eighth Amendment has a tremendously difficult burden to meet," given that "[i]n the last century, the Supreme Court has struck down only a handful of non-capital sentences under the Eighth Amendment, and those cases have been egregious in the extreme." *United States v. Hughes*, 632 F.3d 956, 959 (6th Cir. 2011) (holding that a "ten-year sentence for attempting to entice a minor into sexual relations raises no inference that it is 'grossly disproportionate'" under the Eighth Amendment).

Here, petitioner has not shown that the consecutive terms of imprisonment imposed in this case were so egregious that they amount to cruel and unusual punishment. Indeed, as the Supreme Court pointed out in *Graham*, the Supreme Court has "rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs" under a three-strikes recidivist sentencing statute, and has "also upheld a sentence of life with the possibility of parole for a defendant's third nonviolent felony, the crime of obtaining money by false pretenses, . . . and a sentence of 40 years for possession of marijuana with intent to distribute and distribution of marijuana." *Graham*, 560 U.S. at 60 (citing *Ewing v. California*, 538 U.S. 11 (2003); *Lockyer v. Andrade,* 538 U.S. 63 (2003); *Rummel v. Estelle*, 445 U.S. 263 (1980); *Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam)). The Supreme Court cases cited in *Graham* all posed much closer questions of proportionality between crime and sentence than the case-at-hand, involving separate sentences within the statutory range for the murder of one individual and the felonious assault of another person who came to the murder victim's defense. *Cf. Zdzierak v. Warden, Corr. Reception Ctr.*, No. 1:12cv386, 2013 WL 4455750, at *8 (S.D. Ohio Aug. 16, 2013) (Litkovitz, M.J.) (Report & Recommendation) (holding that the habeas petitioner's sentences for aggravated robbery and robbery "did not run afoul of the Eighth Amendment" because they "fell

within the statutory penalties" for those offenses), *adopted*, 2014 WL 2737927 (S.D. Ohio June 17, 2014) (Spiegel, J.).

Accordingly, in sum, the undersigned concludes that petitioner's state-law claim challenging the imposition of consecutive sentences is not cognizable in this habeas proceeding. In addition, petitioner has not demonstrated that the sentences imposed in this case trigger constitutional concerns under the Eighth Amendment or the Fourteenth Amendment's Due Process and Equal Protection Clauses. Therefore, petitioner's non-defaulted claim in Grounds One and Two of the petition challenging his consecutive sentences should be denied with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. The petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 5) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to claims alleged in Grounds One and Three through Six of the petition, which this Court has concluded are waived and thus procedurally barred from review, because under the first of the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000), "jurists of reason" would not find it debatable whether this Court is correct in its procedural rulings.[6] In addition, a certificate of appealability should not issue with respect to the non-defaulted claim alleged in Grounds One and Two of the petition because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement

---

[6]Because the first prong of the *Slack* test has not been met, the Court need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in the defaulted grounds for relief. *See Slack*, 529 U.S. at 484. However, as noted *supra* pp. 12-13 nn.3-4, petitioner is not entitled to relief based on the defaulted jail-time-credit claim alleged in Ground One or on the defaulted claims alleged in Ground Six because the alleged errors were corrected by the state courts and, therefore, those grounds for relief are moot.

to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

     3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 3/7/16

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID ROBBINS,                                    Case No. 1:15-cv-181
    Petitioner,

                                Barrett, J.
    vs.                                           Litkovitz, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc